423 F.2d 104
 RED STAR TOWING AND TRANSPORTATION COMPANY, as Assignee of
Bouchard Transportation Co., Inc., and of Koppers
Company, Inc., Appellant,
v.
DEPARTMENT OF TRANSPORTATION OF the STATE OF NEW JERSEY (as
successor to New Jersey State Highway Department), David J.
Goldberg, Commissioner of Transportation, and John Doe (name
'John Doe' being fictitious, party intended is bridge tender
and operator), Bridge Tender and Operator.
 No. 17784.
 United States Court of Appeals Third Circuit.
 Argued Sept. 25, 1969.
Decided Jan. 23, 1970.
 
 Stephen J. Buckley, Foley & Martin, New York City (Christopher E. Heckman and Robert J. Roventini, New York City, Edward V. Ryan, Newark, N.J., on the brief), for appellant.
 Stephen Skillman, Asst. Atty. Gen., Dept. of Law and Public Safety, Trenton, N.J. (Arthur J. Sills, Atty. Gen. of New Jersey, Trenton, N.J., on the brief), for appellees.
 Before HASTIE, Chief Judge, and McLAUGHLIN and VAN DUSEN, Circuit judges.
 OPINION OF THE COURT
 HASTIE, Chief Judge.
 
 
 1
 Red Star Towing and Transportation Company, a West Virginia Corporation, brought suit in admiralty against the Department of Transportation of the State of New Jersey and David J. Goldberg, in his official capacity as Commissioner of Transportation, to recover for losses resulting from the collision of a barge with the fender system of the Witt-Penn Bridge which is owned by the State and spans the Hackensack River. Plaintiff alleges that the collision was due to defendants' negligence in maintaining a defective fender system and in delaying the opening of the bridge. The district court dismissed the complaint on the ground that the doctrine of sovereign immunity deprived the court of jurisdiction over the defendants. This is an appeal from that judgment.
 
 
 2
 An unconsenting State is immune from suits brought by individuals under the admiralty jurisdiction of the federal courts.[1] Recognizing this, the plaintiff does not deny that the New Jersey Department of Transportation and its Commissioner in his official capacity are normally entitled to immunity from suit. Rather, its theory of liability is that the State of New Jersey has waived its immunity by constructing and operating a bridge in interstate commerce.
 
 
 3
 The plaintiff argues first, and correctly, that Congress in the exercise of a valid regulatory purpose may condition a State's entry into commerce on the waiver of immunity from suit. Parden v. Terminal Ry. of Alabama State Docks Department, 1964, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233; Petty v. Tennessee-Missouri Bridge Commission, 1959, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804. But the critical question is whether Congress has so conditioned the kind of state activity that caused the harm in suit.
 
 
 4
 The Parden case involved a suit against a State-owned railroad to recover damages under the Federal Employers' Liability Act. That statute specifically creates a federal cause of action against 'every' common carrier engaged in interstate commerce for the benefit of its employees in such activity.[2] The Supreme Court held that Congress intended to include State-owned common carriers within the coverage of the Act, and that Alabama by entering into business as a common carrier by rail 'necessarily consented to such suit as was authorized by that Act.' 377 U.S. at 192, 84 S.Ct. at 1213.
 
 
 5
 In the present case, by constructing and operating the Witt-Penn Bridge over a navigable waterway, the State of New Jersey became subject to Acts of Congress regulating navigation, among them the Rivers and Harbors Appropriation Act of 1899, 33 U.S.C. 401, 403 (1964), which requires a federal permit for bridge building and prohibits unauthorized obstruction of navigation. But Congress in exercising this regulatory authority over navigation did not, as it had in the Federal Employers' Liability Act, create any civil cause of action in favor of private parties injured by any violation of the Act. Rather, it chose to achieve its regulatory purpose through specific penal sanctions.[3]
 
 
 6
 In the Parden case the Supreme Court made clear that the mere entry of a State into a field of congressional regulation will not subject it to suit by private individuals. 377 U.S. at 186, 84 S.Ct. 1207. Congress must express an intent to override the State's immunity. In Parden the Supreme Court found such an intent in the creation by Congress of such a cause of action against private persons as was asserted against the State. However, as has been pointed out, the presently relevant statute regulating the bridging of navigable streams does not confer any new civil remedy upon private parties and thus cannot by logical inference be read as intended to impose equivalent civil liability on an otherwise immune State. A contrary result in Chesapeake Bay Bridge and Tunnel District v. Lauritzen, E.D.Va.1966, 259 F.Supp. 633, aff'd, 4th Cir. 1968, 404 F.2d 1001, seems to be based upon the court's conclusion that the Rivers and Harbors Appropriation Act of 1899 was designed to protect private persons. But that, in our view, is not enough. Where Congress, in providing protection against private violators created no new remedy other than penal sanctions, we think it is illogical to imply that Congress intended that a violation by the State should give rise to a civil claim for damages.[4] Moreover, since the State must consent to suit it seems arbitrary to say that the State consents to civil liability that could not be anticipated by reading the relevant federal statute.[5]
 
 
 7
 The judgment dismissing the complaint will be affirmed.
 
 
 
 [1]
 The Eleventh Amendment provides that the 'Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.' Though only suits 'in law or equity' are specified, it is now well settled that a State also is immune from suit in admiralty. Ex parte New York, 1921, 256 U.S. 490, 41 S.Ct. 588, 65 L.Ed. 1057
 
 
 [2]
 The statute provides in relevant part that 'every common carrier by railroad while engaging in commerce between any of the several States * * * shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce,' and that 'under this chapter an action may be brought in a district court of the United States * * *.' 45 U.S.C. 51, 56
 
 
 [3]
 The Rivers and Harbors Appropriation Act contains specific remedies for its violation and these do not include a private action for damages. Section 406 entitled 'Penalty for wrongful construction of bridges, piers, etc.; removal of structures' provides that a violation of Sections 401, 403, and 404 shall be a misdemeanor, and further, that an obstruction may be eliminated by injunctive proceedings brought under the direction of the Attorney General of the United States. The Statute has also been read, by implication, to permit the United States to remove an obstruction to navigation and then sue the individual responsible for the costs of removal. Wyandotte Trans. Co. v. United States, 1967, 389 U.S. 191, 88 S.Ct. 379, 19 L.Ed.2d 407; United States v. Perma Paving Co., 2d Cir. 1964, 332 F.2d 754
 
 
 [4]
 The Chesapeake Bay Bridge opinion also reasoned that a provision of the Rivers and Harbors Appropriation Act had been held by implication to create civil causes of action in favor of claimants injured by violation of its provisions. 259 F.Supp. at 638, citing Morania Barge No. 140 Inc., v. M. & J. Tracy, Inc., 2d Cir. 1962, 312 F.2d 78, and Reading Co. v. Pope & Talbot, Inc., E.D.Pa.1961, 192 F.Supp. 663, aff'd, 3d Cir. 1961, 295 F.2d 40. However, neither of these cases involved 403 of the Rivers and Harbors Appropriation Act which regulates the State's activity in our case. Both involved 409, the so-called 'Wreck Statute' which places the owner of a wrecked vessel under the specific duty to properly mark the wreck so that it will not create a hazard. In addition, the statute was mentioned in these private damage actions merely to help establish a standard of care in suits cognizable under general principles of maritime law and not to create an otherwise nonexistent cause of action
 
 
 [5]
 Four of the present Justices of the Supreme Court viewed the waiver or consent by the State as unreal even in the Parden situation, 377 U.S. at 198-200, 84 S.Ct. 1207. And see Note, Private Suits Against States in the Federal Courts, 1966, 33 U.Chi.L.Rev. 331. The circumstances of the present case make much clearer the unreality of the alleged state consent. Cf. Delong Corp. v. Oregon State Highway Comm'n., D.Ore.1964, 233 F.Supp. 7, aff'd, 9th Cir. 1965, 343 F.2d 911, cert. denied, 382 U.S. 877, 86 S.Ct. 161, 15 L.Ed.2d 119