**In the Matter of WILLIAMSON TOWING CO., INC., as owner and operator of the M/V GREENVILLE, praying for exoneration from or limitation of liability, Plaintiff-Appellant,**

v.

**STATE OF ILLINOIS, Third Party Defendant-Appellee.**

**No. 75–1711.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 9, 1976.

Decided April 15, 1976.

Joel J. Henderson, Clayton J. Swank, Greenville, Miss., John G. Holland, Cairo, Ill., for plaintiff-appellant.

William J. Scott, Atty. Gen., Paul V. Esposito, Asst. Atty. Gen., Chicago, Ill., for third party defendant-appellee.

Before TONE and BAUER, Circuit Judges, and HOFFMAN, Senior District Judge.*

TONE, Circuit Judge.

The issue before us in this action against the State of Illinois for negligent operation of a bridge across the Mississippi River is whether the state has surrendered its immunity under the Eleventh Amendment.

The District Court held that it has not, and we affirm.

One night in January, 1973, a flotilla of barges towed by a Williamson Towing Company tug collided with a pier of the Upper Cairo Highway Bridge, which spans the Mississippi River between Illinois and Missouri and is owned and maintained by those two states. Williamson filed an action in admiralty in the United States District Court for the Northern District of Mississippi pursuant to the Limitation of Vessel Owner's Liability Act, 46 U.S.C. § 181 *et seq.*, seeking exoneration from, or limitation of, liability for all claims arising out of the collision. Shortly thereafter, the Alter Company, owner of the barges and bailee of the cargo, filed a claim against Williamson to recover for damage suffered by the barges and the cargo. On Williamson's motion, the case was transferred under 28 U.S.C. § 1404(a) to the Eastern District of Illinois so the State of Illinois could be impleaded. Williamson then filed a third-party complaint against the state, alleging negligence in failing to have the bridge's navigation lights turned on. From the District Court's dismissal of the third-party complaint on the ground of lack of jurisdiction under the Eleventh Amendment, Williamson took this appeal.

■ The Eleventh Amendment provides as follows:

> "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Supreme Court has construed the amendment to bar a suit in admiralty, such as the present one, brought against a state in federal court. *Ex parte State of New York*, 256 U.S. 490, 497–498, 41 S.Ct. 588,

---

* The Honorable Julius J. Hoffman, Senior District Judge, United States District Court for the Northern District of Illinois, is sitting by designation.

589, 65 L.Ed. 1057, 1060 (1921); *Ex parte Madrazzo*, 32 U.S. (7 Pet.) 627, 632, 8 L.Ed. 808, 810 (1833). The State of Illinois is therefore immune from suits such as this unless it has waived its immunity.[1]

The Illinois Constitution of 1970 provides as follows:

"Except as the General Assembly may provide by law, sovereign immunity in this State is abolished." Art. XIII, § 4.

The General Assembly has, however, restored the state's immunity, except to the extent suit is permitted by the Court of Claims Act:

"Except as provided in 'AN ACT to create the Court of Claims, to prescribe its powers and duties, and to repeal AN ACT herein named', filed July 17, 1945, as amended, the State of Illinois shall not be made a defendant or party in any court." Ill.Rev.Stat. ch. 127, § 801 (1973).

The Court of Claims Act, in turn, permits suits founded on various categories of claims, including tort, to be brought against the state in the Illinois Court of Claims. Ill.Rev.Stat. ch. 37, § 439.1 *et seq.* (1973).

■ Williamson argues that sovereign immunity, having been abolished by the state constitution, is not restored by the statute, and that the latter merely provides a procedure for asserting claims against the state. It further argues that the Court of Claims Act is unconstitutional because it requires admiralty claims against the state to be litigated in a state court, thereby purporting to limit the federal court's admiralty jurisdiction.

The net effect of the state constitutional provision and the statute is not, however, to abolish all sovereign immunity. The Illinois General Assembly, exercising the authority granted to it by article XIII, section 4, of the state constitution, reasserted sovereign immunity for the state, except to the extent that suit was permitted by the Court of

Claims Act. *Williams v. Medical Center Commission*, 60 Ill.2d 389, 394–395, 328 N.E.2d 1, 4 (1975). Thus it is not the Illinois Court of Claims Act that precludes Williamson from asserting its admiralty claim against the state but the doctrine of sovereign immunity embodied in the Eleventh Amendment.

■ We turn now to Williamson's more substantial argument, that the state has waived its immunity by acquiring and operating the bridge. The pertinent history begins with an act relating to another bridge, which was to cross the Ohio River at Cairo, Illinois. By this act, adopted in 1934, Congress created the Cairo Bridge Commission, giving it authority to construct and operate a bridge across the Ohio, Act of April 13, 1934, ch. 117, 48 Stat. 577, and providing, *inter alia*, that the Commission "may contract and be contracted with, sue and be sued, implead and be impleaded, complain and defend in all courts of law and equity . . .." *Id.* § 8. In 1938 Congress authorized the Cairo Bridge Commission to purchase and maintain the bridge involved in this case, and to convey respective portions of the bridge to the States of Illinois and Missouri after suitable financial arrangements had been made. Act of June 14, 1938, ch. 359, 52 Stat. 679. The Commission acquired the Mississippi River bridge and operated it as a toll bridge until 1954, when by warranty deed, pursuant to resolution, it conveyed the part of the bridge adjacent to Illinois to the State of Illinois. The Williamson tow struck a pier on the Illinois part of the bridge.

Williamson contends that the state, as successor and assignee of the Commission, succeeded to its powers and responsibilities, at least with respect to suing and being sued; and that the state's succession, in view of the quoted language in section 8 of the 1934 act, effected a waiver of Eleventh Amendment immunity. That section, how-

---

1. Since Williamson is incorporated and has its principal place of business in Mississippi, an action by it falls literally within the bar of the amendment, although the bar has been extend-

ed to suits by the state's own citizens as well. See *Bond v. Stanton*, 528 F.2d 688, 691 (7th Cir. 1976), and cases cited therein.

ever, refers only to the Commission and not to its successors and assigns, an omission which undercuts Williamson's arguments since there are references in various other sections of the two acts to the "Commission and its successors and assigns." A careful reading of the two acts has persuaded us that Congress did not intend to make the sue-and-be-sued provision applicable to the state.

■ Williamson's final theory of liability is that the state has waived its immunity by acquiring and operating a bridge in interstate commerce. By so doing, the argument goes, the state became subject to the provisions of the Bridge Act of 1906, 33 U.S.C. § 491 *et seq.*, prohibiting unreasonable obstructions to navigation, requiring lights and other signals, and providing penalties for violations, *id.* §§ 494, 495. That act, says Williamson, should be construed to create a private right of action against the state. We assume for purposes of this opinion that the 1906 act is applicable [2] and turn to the question of whether the act creates a private right of action against the state.

There is no doubt that Congress, if it had chosen to do so, could have conditioned the state's entry into commerce on waiver of immunity from suit. *Parden v. Terminal Railway of the Alabama State Docks Department,* 377 U.S. 184, 192, 84 S.Ct. 1207, 1212, 12 L.Ed.2d 233, 239 (1964); *Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 281–282, 79 S.Ct. 785, 789, 3 L.Ed.2d 804, 809 (1959). *Petty* found an express waiver of immunity in the language of an interstate compact, read in combination with a condition attached by Congress when it approved the compact. *Parden*

held that the express provision for suits against railroads contained in the Federal Employers' Liability Act, 45 U.S.C. §§ 51, 56, was intended by Congress to apply to a state-owned railroad. In *Employees of the Department of Public Health and Welfare of Missouri v. Department of Public Health and Welfare of Missouri,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), however, the Court refused to extend *Parden* to make the state subject to suit under the Fair Labor Standards Act, 29 U.S.C. § 216(b), finding that Congress had not expressly done so and "would not be presumed to take such action silently." [3] 411 U.S. at 284–285, 93 S.Ct. at 1618, 36 L.Ed.2d at 256.

The courts of appeals that have considered the applicability of *Parden* and *Petty* to situations similar to the one before us are divided. The Fourth Circuit, in *Chesapeake Bay Bridge and Tunnel District v. Lauritzen,* 404 F.2d 1001 (4th Cir. 1968), held that the state waived its immunity when a state agency constructed a bridge and tunnel spanning Chesapeake Bay pursuant to permission granted by federal authorities under the Rivers and Harbors Appropriations Act, 33 U.S.C. § 401 *et seq.* The Third Circuit reached a contrary result in *Red Star Towing & Transportation Co. v. Department of Transportation of New Jersey,* 423 F.2d 104 (3rd Cir. 1970), observing that since the Rivers and Harbors Appropriations Act "created no new remedy other than penal sanctions, . . . it is illogical to imply that Congress intended that a violation by the State should give rise to a civil claim for damages." *Id.* at 196. Moreover, the court added, it would be arbitrary to infer a waiver by consent "to civil liabili-

---

**2.** Although the "persons" to whom the act applies do not include states, 33 U.S.C. § 497, section 1 of the 1938 Cairo Bridge Act authorizes the Commission and its successors and assigns to acquire the bridge and "repair, reconstruct, rebuild, enlarge, renew, or replace" it in accordance with the provisions of the Bridge Act of 1906. Although the record is silent on the point, our assumption, necessary to make the 1906 act applicable, is that the offending part of the bridge had been the sub-

ject of repair or other work described in section 1.

**3.** In so finding, the Court referred specifically to "state institutions not conducted for profit," thus distinguishing businesses carried on by the state, like the state-operated railroad in *Parden.* 411 U.S. at 284, 93 S.Ct. at 1617, 36 L.Ed.2d at 256. Operation of a non-toll bridge would fall into the nonproprietary category.

ty that could not be anticipated by reading the relevant federal statute." *Id.* The court recognized that its decision was in conflict with *Chesapeake Bay Bridge.* Finally, the Fifth Circuit also declined to follow *Chesapeake Bay Bridge* in a case in which the plaintiff sought, as Williamson does here, to rely on the state's acceptance of an existing bridge subject to the terms of the Bridge Act of 1906. *Intracoastal Transportation, Inc. v. Decatur County,* 482 F.2d 361 (5th Cir. 1973). The court in *Intracoastal Transportation* interpreted the Supreme Court's *Employees* decision as adding an additional requirement to the *Parden* test:

"It is no longer sufficient merely to show that a State has entered a federally regulated sphere of activity and that a private cause of action is created for violating the applicable federal provision, but in addition the private litigant must show that Congress expressly provided that the private remedy is applicable to the States." 482 F.2d at 365.

The additional requirement was not met because the Bridge Act did not create a private right of action. That act, said the court, "is penal in nature and enforcement

of its provisions is vested in the Attorney General." [4] *Id.* at 366.

We believe that *Red Star Towing* represents a correct reading of *Parden* and that the doctrinal current evidenced by the *Employees* case, decided after *Red Star Towing* is correctly measured by *Intracoastal Transportation.* That conclusion is confirmed by the later decision in *Edelman v. Jordan,* 415 U.S. 651, 673, 94 S.Ct. 1347, 1360, 39 L.Ed.2d 662, 678 (1974), in which the Supreme Court held that a state did not waive its immunity by participating in a federal program under the Social Security Act, 42 U.S.C. §§ 1381–1385. In reversing this court, which had relied on *Parden* and *Petty* in denying immunity, the Supreme Court in *Edelman* noted that both those cases, like the *Employees* case involved a "congressional enactment which by its terms authorized suit by designated plaintiffs against a general class of defendants which literally included States . . .." *Id.* at 672, 94 S.Ct. at 1360, 39 L.Ed.2d at 678. That "threshold fact" was absent in *Edelman* as it is in the case at bar. As for this court's holding that the state had "constructively consented" to the suit by participating in the federal program and agreeing to administer federal and

---

**4.** 33 U.S.C. § 494 prohibits erecting or maintaining a bridge in such manner as unreasonably to obstruct "the free navigation of the waters over which it is constructed," and provides that the Secretary of the Army shall notify the owner of the bridge of such obstructions and prescribe changes to be made. It also requires the owner to maintain "such lights and other signals thereon as the Commandant of the Coast Guard shall prescribe." 33 U.S.C. § 495 punishes failures to comply with orders of the Secretary of the Army as misdemeanors and permits the Secretary upon refusal of the owner to comply with an order, to remove the obstruction and bring suit against the owner for the cost of removal, or to initiate an action under the direction of the Attorney General for injunction or mandamus to enforce the Secretary's orders. No provision is made for enforcement of signal regulations promulgated by the Commandant of the Coast Guard. The lack of such an enforcement provision adds weight to our conclusion that no private remedy against the state should be implied.

Plaintiff in the case at bar does not seek to rely upon traditional admiralty tort law, which

makes the negligent maintenance of a bridge actionable. *Cf.* Gilmore & Black, *The Law of Admiralty,* § 7–17 (1957). The Eleventh Amendment obstacle to suit in the federal court would be the same for such a non-statutory claim as it is for a claim based on the statute.

Plaintiff does argue that the 1938 Cairo Bridge Act impliedly conditioned the state's acceptance of the bridge upon its waiver of sovereign immunity, since the act imposed on the state the duty of properly maintaining, operating, and repairing the bridge. This provision adds nothing to the duty already imposed upon the state by the Bridge Act of 1906 and the law of admiralty. There is no doubt that the state, as the owner and operator of the bridge, is under a duty to operate and maintain it properly. To say this is not, however, to answer the question of whether the state has waived its immunity from private suit. There is no more reason to infer a waiver of immunity or an intent to create a private right of action against the state from the 1938 Cairo Bridge Act than from the Bridge Act of 1906.

state funds in accordance with federal law, the Supreme Court said:

"Constructive consent is not a doctrine commonly associated with the surrender of constitutional rights, and we see no place for it here. In deciding whether a State has waived its constitutional protection under the Eleventh Amendment, we will find waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' *Murray v. Wilson Distilling Co.*, 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909)." 415 U.S. at 673, 94 S.Ct. at 1360, 39 L.Ed.2d at 678.

The Court also said:

"[W]hile this Court has, in cases such as *J. I. Case Co. v. Borak*, 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), authorized suits by one private party against another in order to effectuate a statutory purpose, it has never done so in the context of the Eleventh Amendment and a state defendant." 415 U.S. at 673–674, 94 S.Ct. at 1361, 39 L.Ed.2d at 679.[5]

Here, like the provision in *Edelman*, and unlike those in *Parden* and *Petty*, the statutory provisions fall far short of a waiver by the state of its Eleventh Amendment immunity. The Eleventh Amendment therefore bars the relief which is sought.[6]

AFFIRMED.

**5.** Between the two passages quoted above, the Court in *Edelman* said it saw "no reason to retreat from the Court's statement" in *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 877, 88 L.Ed. 1121, 1126 (1944), requiring "a clear declaration of the state's intention to submit" its problems in "the vital field of financial administration" to courts other than its own, and added that mere participation by the state in a program for federal assistance for state public aid does not amount to consent to be sued in the federal courts. 415 U.S. at 673, 94 S.Ct. at 1360, 39 L.Ed.2d at 678.

We do not think this language detracts from the force of the language of general applicability quoted above in the text. In this connection, it is noteworthy that the Court did not distinguish *Parden* and *Petty* on the ground that they involved non-fiscal matters.

**6.** This opinion has been circulated among all judges of this court in regular active service, since it adopts a position concerning which a conflict exists among the circuits. No judge requested that the case be considered in banc.