**SEA LAND SERVICE INC.,**
Plaintiff-Appellant,

v.

**ESTADO LIBRE ASOCIADO DE PUER-
TO RICO DEPARTMENTO DE IN-
STRUCION PUBLICA, Defendant-Ap-
pellee.**

No. 78–1136.

United States Court of Appeals,
First Circuit.

Argued Oct. 2, 1978.

Decided Dec. 8, 1978.

Gilberto Mayo Pagan, Santurce, P. R., with whom Cancio, Cuevas & Mayo, Santurce, P. R., was on brief, for plaintiff-appellant.

Americo Serra, Asst. Sol. Gen., Rio Piedras, P. R., with whom Hector A. Colon Cruz, Sol. Gen., Dept. of Justice, San Juan, P. R., was on brief, for defendant-appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

BOWNES, Circuit Judge.

The sole issue in this case is whether the eleventh amendment [1] bars an action for demurrage in the federal courts against defendants-appellees, the Department of Edu-

---

1. "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

cation of the Commonwealth of Puerto Rico.

Appellant, a maritime carrier, brought an action for demurrage in the District Court of Puerto Rico under 28 U.S.C. § 1331 and 1337 [2] invoking the provisions of the Shipping Act, 46 U.S.C. §§ 801 *et seq.,* and the Intercoastal Shipping Act, 46 U.S.C. §§ 843 *et seq.* Appellant alleged that the Department of Education incurred demurrage charges because it detained shipping containers belonging to appellant beyond the prescribed period. The demurrage charges are authorized under 46 U.S.C. § 814 and 46 U.S.C. § 844 of the respective Acts (tariff clauses). In a well reasoned opinion, the district court dismissed on the grounds that the eleventh amendment barred the action. We agree.

█ Appellant first argues that the Commonwealth is a person subject to the Shipping and Intercoastal Shipping Acts. While conceding, as it must, that neither of the Acts expressly includes the Commonwealth or any state, appellant contends that the legislative history of the Intercoastal Shipping Act shows that Congress intended to bring the states within its jurisdiction and beyond the proscription of the eleventh amendment. This purpose is somehow construed from the repeal of section 6 of the Shipping Act of 1933, 46 U.S.C. § 846, and the concurrent adoption of section 5, 46 U.S.C. § 845b. Section 6 had provided, in effect, that reduced shipping rates could be made available for the United States, state or municipal governments, or for charitable purposes. Section 5 provided exactly to the contrary.

The provisions of this chapter are extended and shall apply to every common carrier by water in interstate commerce, as defined in section 801 of this title, and shall apply to the carriage, storage or handling of property for the United States, State or municipal governments, or for charitable purposes.

Any sensible reading of the two sections shows that appellant's position is a gross distortion of congressional intent. *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), and *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), are cases directed to the type of congressional enactment and intent sufficient to avoid the eleventh amendment proscription of suits against a state. It must be clear that Congress intended to impose financial liability on a state or one of its agencies. The elimination of special shipping rates for federal, state, and municipal governments and charitable organizations does not fit the pattern, or even a stretching of it, set forth in these cases.[3] The 1933 changes in no way affect the scope of the eleventh amendment.

Appellant's reliance on two decisions of the Federal Maritime Commission as au-

**2.** 28 U.S.C. § 1331(a):
The district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.
28 U.S.C. § 1337:
The district courts shall have original jurisdiction of any civil action or proceeding arising under any Act of Congress regulating commerce or protecting trade and commerce against restraints and monopolies.

**3.** *Hutto v. Finney,* 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978), focused on two awards of attorney's fees: one in the nature of con-

tempt against the Department of Correction for the State of Arkansas for wilful refusal to obey orders of the district court, and, the second, under the Civil Rights Attorney's Fees Awards Act of 1976. The Court held that neither award was barred by the eleventh amendment. In *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976), the Court held that back pay awards and attorney's fees under Title VII of the Civil Rights Act of 1964 was a proper exercise of congressional power under the fourteenth amendment and the eleventh amendment did not apply. Both of these cases were exceptions to the general rule of *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), that the eleventh amendment bars liability payable from public funds in the state treasury if the state does not consent to the suit.

thority for including the Commonwealth within the Acts also founders on the rocks of common sense and established law. In the first, *Freight Forwarders' Bids on Government Shipments at U. S. Ports—Possible Violations of the Shipping Act, 1916 and General Order # 4,* March 18, 1977, the Commission found that GSA and other governmental agencies were "persons" under section 16 of the Shipping Act. This obviously has nothing to do with the eleventh amendment. The second decision, *Administrative Decision Berthing of Seatrain Vessels in San Juan, Puerto Rico,* Docket No. 74–41, August 10, 1977, involved the Puerto Rico Ports Authority which is a public corporation separate and distinct from the Commonwealth. The Ports Authority is by design and purpose in the shipping business and clearly subject to both Acts. Here, however, the Department of Education was only a consignee, a purchaser of goods shipped by appellant.

■ This leads to the next contention of appellant: that the Department of Education by purchasing goods that were shipped by a maritime carrier waived its eleventh amendment immunity and impliedly consented to suit in the federal courts. None of the cases cited by appellant stands for this proposition. A state does, of course, waive eleventh amendment immunity when it actively engages in business activities involving interstate commerce which Congress has chosen to regulate under circumstances or language indicating its intent to create federal rights and remedies. The base case is *Parden v. Terminal R. Co.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964), in which it was held that a state that owns and operates a railroad in interstate commerce could not plead sovereign immunity in a suit brought against it under the Federal Employers Liability Act. The Court found that Congress, in enacting the FELA intended to subject to suit a state that was a common carrier by railroad in interstate commerce. *Id.* at 187, 84 S.Ct. 1207. The Court explicitly noted that it was the state's railroad operation that lifted the bar of sovereign immunity.

Recognition of the congressional power to render a State suable under the FELA does not mean that the immunity doctrine, as embodied in the Eleventh Amendment with respect to citizens of other States and as extended to the State's own citizens by the *Hans* case, [*Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842], is here being overridden. It remains the law that a State may not be sued by an individual without its consent. Our conclusion is simply that Alabama, when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such suit as was authorized by that Act.

*Id.* at 192, 84 S.Ct. at 1213. So also in *United States v. California,* 297 U.S. 175, 185, 56 S.Ct. 421, 424, 80 L.Ed. 567 (1936):

California, by engaging in interstate commerce by rail, has subjected itself to the commerce power, and is liable for a violation of the Safety Appliance Act, as are other carriers, unless the statute is to be deemed inapplicable to state-owned railroads because it does not specifically mention them.

In *California v. Taylor,* 353 U.S. 553, 77 S.Ct. 1037, 1 L.Ed.2d 1084 (1956), the Court held that the same state run railroad (State Belt Railroad) was subject to the Railway Labor Act.

We have been unable to find any case suggesting that a state or one of its departments waived its sovereign immunity by purchasing tariff rated goods that travelled in interstate or maritime commerce.

The sweep of *Parden v. Terminal R. Co., supra,* has been narrowed by *Employees v. Missouri Public Health Department,* 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), which held that a suit for overtime pay under the Fair Labor Standards Act by employees of state health facilities against the State of Missouri was barred by the eleventh amendment. The Court stated:

It is true that, as the Court said in *Parden,* "the States surrendered a portion of their sovereignty when they granted Con-

gress the power to regulate commerce." 377 U.S., at 191, 84 S.Ct., at 1212. But we decline to extend *Parden* to cover every exercise by Congress of its commerce power, where the purpose of Congress to give force to the Supremacy Clause by lifting the sovereignty of the States and putting the States on the same footing as other employers is not clear.

*Id.* at 286–87, 93 S.Ct. at 1619. The Fifth Circuit has held that the operation of a drawbridge over navigable waters by the State of Georgia did not work a waiver of sovereign immunity and the state could not be sued by private parties. *Intercoastal Transp., Inc. v. DeCatur County, Georgia,* 482 F.2d 361 (5th Cir. 1973).

Appellant seems to equate federal jurisdiction for private parties under the Shipping and Intercoastal Shipping Acts [4] with the right of an individual to sue the Commonwealth in the federal courts. The eleventh amendment eliminates such an equation. In a case cited by appellant in support of its contention that the Commonwealth was engaged in maritime commerce by purchasing goods shipped by a maritime carrier, *Commonwealth of Puerto Rico v. Sea-Land Service, Inc.,* 349 F.Supp. 964, 976 (D.C.P.R.1970), the court explicitly noted:

It is settled law that the Commonwealth of Puerto Rico, as a sovereign, has not consented to be sued for damages in the federal courts. *Salkin v. Commonwealth of Puerto Rico,* 408 F.2d 682 (1st Cir. 1969). But this basic principle is of no application to a case in which the Commonwealth sues the citizen for the violation of a contract of carriage by water and for eventual damages. One thing is the Commonwealth as a defendant in which case it has the right to plead its sovereign immunity, and another thing is the Commonwealth as plaintiff, voluntarily filing a complaint against a citizen.

There is no basis in law or logic for holding that a state as a consignee of goods shipped by a maritime carrier has thereby engaged in maritime commerce to the extent of waiving its sovereign immunity. Such a holding would render every state that purchases goods delivered by a common carrier in maritime or interstate commerce amenable to suit by the carrier in the federal courts. This would, in effect, work a repeal of the eleventh amendment.

*Affirmed.*

---

4. *See Maritime Service v. Sweet Brokerage De Puerto Rico,* 537 F.2d 560 (1st Cir. 1976).