**Rita P. CAREY et al., Plaintiffs,**

v.

**Jack D. WHITE, Individually and as Secretary of Health & Social Services of the State of Delaware, et al., Defendants.**

Civ. A. No. 4722.

United States District Court
D. Delaware.

Jan. 6, 1976.

C. Waggaman Berl, Jr., Wilmington, Del., for plaintiffs.

Barry W. Meekins, Deputy Atty. Gen., W. Laird Stabler, Jr., U. S. Atty., Wilmington, Del., Rex E. Lee, Asst. Atty. Gen., Harland F. Leathers, and Robert M. Rader, Dept. of Justice, Washington, D. C., for defendants.

## OPINION

STAPLETON, District Judge:

Plaintiffs are five patients at the Delaware State Hospital, a state institution for the mentally ill. Defendants are former and present officials of the Delaware Department of Health and Social Services, that Department's Division of Mental Health and Retardation and the Delaware State Hospital. The details of plaintiffs' allegations are discussed in the Court's Opinion of April 10, 1974, denying defendants' motion to dismiss in part and granting it in part. In brief, plaintiffs allege that defendants have subjected them to a "system of peonage" at the state hospital thereby violating their constitutional rights under the Eighth, Thirteenth and Fourteenth Amendments as well as violating the minimum wage provisions of the Fair Labor Standards Act (FLSA).

In the April Opinion, this Court dismissed plaintiffs' claims for injunctive and monetary relief under the FLSA.[1] The Court held that plaintiffs' claims for injunctive relief were barred because 29 U.S.C. § 217 authorized only the Secretary of Labor to seek injunctions against violations of the FLSA. The claims for monetary relief were held barred by the Eleventh Amendment.

██ Shortly after the issuance of its Opinion, this Court discovered that Congress had amended the FLSA, on April 8, 1974, by inserting specific provisions authorizing individual state employees to sue their public agency-employers under 29 U.S.C. § 216(b). These amendments purported to overrule the Supreme Court's decision in *Employees v. Missouri Public Health Department*, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973)[2] on which this Court had relied in dismissing plaintiffs' claims for monetary damages in light of the Eleventh Amendment. Reargument was granted on the single question of whether monetary relief in actions by state employees under 29 U.S.C. § 216(b) was barred by the Eleventh Amendment.[3]

---

1. The Court declined to dismiss the claims under 42 U.S.C. §§ 1983, 1985, and 1988 for violations of plaintiffs' constitutional rights.

2. See 29 U.S.C. §§ 203(x) and 216(b) as amended. See also *Dunlop v. New Jersey*, 3 Cir., 522 F.2d 504 at 514–515.

3. The Court does not accept defendants' contention that the 1974 amendments are not applicable to plaintiffs who filed their suit in September, 1973, in that 29 U.S.C. § 255(d) only intended the amendments to apply retroactively to those who filed their suits *before* April 18, 1973, the date of the Supreme Court's decision in *Employees.* 29 U.S.C. § 255(d) reads:

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act—

> (d) with respect to any cause of action brought under section 216(b) of this title against a State or a political subdivision of a State in a district court of the United States on or before April 18, 1973, the running of the statutory periods of limitations shall be deemed suspended during the period beginning with the commencement of any such action and ending one hundred and eighty days after the effective date of the Fair Labor Standards Amendments of 1974, except that such suspension shall not be applicable if in such action judgment has been entered for the defendant on the grounds other than State immunity from Federal jurisdiction.

As this Court interprets the above section, by suspending the running of the statute of limitations for those plaintiffs whose cases were dismissed in light of *Employees,* Congress indicated that when it made the FLSA applicable to the states as employers of non-supervisory personnel in hospitals, institutions, schools and the like in 1966, it also intended to extend to the state employees a cause of action for monetary relief under 29 U.S.C. § 216(b).

■ Pursuant to 28 U.S.C. § 2403, the Court notified the Attorney General of the United States that the constitutionality of the FLSA as amended was being questioned. The United States intervened and filed a brief in support of the constitutionality of the amendments. The question having been fully briefed, the Court now finds that the 1974 amendments to the FLSA, insofar as they authorize state employees to sue their employer for monetary damages in federal courts, do not violate the Eleventh Amendment. For that reason the dismissal of plaintiffs' claim for monetary relief under the FLSA is reversed.

■ The instant case poses a problem which requires for its resolution the accommodation of opposing state and federal interests. On the one hand, the Eleventh Amendment bars federal suits against unconsenting states by citizens of other states, by citizens or subjects of foreign states, or by their own citizens.[4] On the other hand, Congress has the authority, pursuant to powers granted it under the commerce clause to regulate activities affecting interstate commerce, even if such regulation entails exercising control over states engaged in such activities. *Maryland v. Wirtz*, 392 U.S. 183, 88 S.Ct. 2017, 20 L.Ed.2d 1020 (1968).[5] And as part of a federal regulatory scheme, Congress can condition a state's participation in federal programs or federally regulated activities on the states' consenting to be sued in federal court. *Parden v. Terminal R. Co., supra.* In such cases, waiver of a state's Eleventh Amendment immunity is implied from the fact of participation in the federally regulated activity with knowledge that such participation will be taken as consent to be sued in federal court.

■ Waiver will not easily be implied in such a manner, however. Mere participation by the state in a federally regulated activity absent a clear Congressional intent that such participation would be held to constitute waiver, will not constitute consent by the state to federal suits. *Edelman v. Jordan, supra.* It must be fully apparent to the state that the consequence of its choice to engage in a particular activity will be exposure to suits in federal court. *Red Star Towing and Transportation Company v. Department of Transportation of the State of New Jersey*, 423 F.2d 104 (3rd Cir. 1970); *Federal Deposit Insurance Corporation v. Cades*, 357 F.Supp. 1111 (E.D.Pa.1973); cf. *Employees v. Missouri Public Health Department, supra; Edelman v. Jordan, supra.*

In *Parden v. Terminal R. Co., supra,* for example, the Court implied waiver of Eleventh Amendment protections from the fact that the State of Alabama operated a railroad with full knowledge that it would be subject, as an operator, to

Whether a suit was brought before or after the decision in *Employees* could have little import if Congress' declared intent is that the state employees should have been permitted to maintain suits under this section of the FLSA since the effective date of the 1966 amendments.

4. The Eleventh Amendment reads:

The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

Although the Eleventh Amendment literally does not apply to suits against a state by its own citizens, it is now well-established that such suits are likewise barred by the Amendment. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees*

*v. Missouri Public Health Department, supra; Parden v. Terminal R. Co.*, 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964); *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890).

5. More specifically, in *Maryland v. Wirtz*, the Court held that a state which operated a school or hospital was obligated to abide by the Congressionally mandated minimum wage-maximum hour provisions of the Fair Labor Standards Act and that imposing such an obligation on the states as employers did not endanger the States in their sovereign capacity. The Court stated:

But while the commerce power has limits, valid regulations of commerce do not cease to be regulations of commerce because a State is involved. 392 U.S. 183 at 197, 88 S.Ct. at 2024.

enforcement actions pursuant to the Federal Employers Liability Act. As stated by Justice Brennan for the majority of the Court:

It remains the law that a State may not be sued by an individual without its consent. Our conclusion is simply that Alabama, when it began operation of an interstate railroad approximately 20 years after enactment of the FELA, necessarily consented to such a suit as was authorized by that Act. By adopting and ratifying the Commerce Clause, the States empowered Congress to create such a right of action against interstate railroads; by enacting the FELA in the exercise of this power, Congress conditioned the right to operate a railroad in interstate commerce upon amenability to suit in federal court as provided by the Act; by thereafter operating a railroad in interstate commerce, Alabama must be taken to have accepted that condition and thus to have consented to suit.

It was the State's knowledge that it would be subjecting itself to enforcement suits in federal court which permitted the Court to imply waiver in *Parden.*

The specificity with which Congress must speak if waiver is to be implied will vary depending upon the nature of the functions being performed by the states. Apparently less specificity is required where the functions in question are proprietary in nature. *Employees v. Missouri Public Health Department, supra.* In *Parden,* for example, it was sufficient that the State was operating a railroad in interstate commerce in the face of declared Congressional intent to subject those who operated railroads in interstate commerce to enforcement provisions of the FELA. No clearly articulated Congressional intent that states, as operators, would be considered subject to the FELA was required.

In the case of governmental functions, such as those in the case at bar,[6] however, courts are far more reluctant to imply waiver from the fact of a state's participation in a federally regulated activity in the face of Congressional intent to provide enforcement remedies in the federal courts. This does not suggest that waiver cannot be found in such situations. Rather, it suggests that courts must look with far more scrutiny for the requisite Congressional intent from which states' knowing waiver can be implied. Where the activities in question are governmental in nature, waiver will be implied only where Congress has expressly articulated its intent to expose participating states to federal suits. *Employees v. Missouri Public Health Department, supra.* Cf. *Edelman v. Jordan, supra,* 415 U.S. at 673–74, 94 S.Ct. 1347. As stated by the Court in *Employees, supra* 411 U.S. at 284–85, 93 S.Ct. at 1618:

Where employees in state institutions not conducted for profit have such a relation to interstate commerce that national policy, of which Congress is the keeper, indicates that their status should be raised, Congress can act. And when Congress does act, it may place new or even enormous fiscal burdens on the States. Congress, acting responsibly, would not be presumed to take such action silently. . . .

In the case at bar Congress could not have more clearly articulated its intent that states operating mental hospitals[7] would be subject to suits in federal courts by their employees under § 216(b) of the FLSA. As stated by the Third Circuit in its recent opinion in *Dunlop v. State of New Jersey,* 3 Cir., 522 F.2d 504 at 515 (1975):

The legislative history of the 1974 Amendments to the FLSA makes clear the fact that the amendment to this section was expressly designed to over-

---

6. In *Employees v. Missouri Public Health Department, supra,* the Court explicitly found that in operating a mental hospital, the State is engaged in a typically governmental function. 411 U.S. at 284, 93 S.Ct. 1614.

7. And other designated institutions.

come the ruling in Employees, supra [that Congress had not intended to give state hospital and other institutional employees a cause of action in federal courts against their employers for back-pay under § 216(b)].

Thus, in 1974, Congress' intent to provide state hospital employees with a federal remedy under § 216(b) was apparent. The states at that time had the choice of ceasing to engage in the federally regulated activity or of waiving their immunity to suits in federal courts, a choice which *Parden* teaches it is constitutionally permissible to impose.[8] The State of Delaware chose to continue operating institutions for the mentally ill[9] in light of this clearly articulated Congressional intent. In making that choice with full knowledge of the consequences it entailed, the State of Delaware waived its Eleventh Amendment shield.

**8.** It has been argued (see Justice Marshall's concurring opinion in *Employees v. Missouri Public Health Department, supra,* 411 U.S. at 296, 93 S.Ct. 1614) that *Parden* applies only in the case where Congress imposes such a choice on the states prospectively. That is, waiver would be implied only where, given a choice between entering a federally regulated activity or preserving its immunity from federal suits, the state chooses the former. However, in a case such as the one before this Court, it is argued, no genuine choice is posed where the state would be called on either to cease a long-standing practice of operating mental institutions or waive its Eleventh Amendment immunity. Under this approach, waiver would not be implied where the state chose to continue performing a function it had been performing for many years, in the face of clear but recent Congressional intent to subject it to federal suits.

While such an approach may have surface appeal, it is apparent upon further scrutiny that adopting the proposed formulation of when waiver may be implied would wreak havoc with any attempt to foster a uniform federal regulatory scheme. Whether or not a particular participating state would be subject to federal enforcement actions would depend not on any systematic analysis of the impact of the state's activity on the federal program, but rather on the happenstance of whether the particular state decided to undertake the endeavor in question before or after Congress acted. More troublesome perhaps is the inflexibility that such an approach would impose on an otherwise dynamic governmental process which depends on flexibility to cope with the increasingly complex demands of today's society. Innovative federal regulation in response to newly felt needs would be stunted at whatever point in time a particular state chose to enter the regulated field. Such a result is not in keeping with the notion expressed in *Parden, supra,* 377 U.S. at 191, 84 S.Ct. at 1212 that "[w]hile a State's immunity from suit by a citizen without its consent has been said to be rooted in 'the inherent nature of sovereignty,' *Great Northern Life Ins. Co. v. Read, supra,* 322 U.S. 47, 51 [64 S.Ct. 873, 875, 88 L.Ed. 1121], the States surrendered a portion of their sovereignty when they granted Congress the power to regulate commerce." (footnote omitted).

**9.** The Court takes judicial notice that the State of Delaware has continued to operate the mental institution here involved since the passage of the 1974 Amendments to the Fair Labor Standards Act.