In the Matter of KAHR BROTHERS, INC., Debtors.

Ronald and Joan DeLUCA, his wife; et al., Plaintiffs,

v.

KAHR BROTHERS, INC.; et al., Defendants/Third Party Plaintiffs,

v.

WILLIAM G. MAJOR ASSOCIATES, INC., Third Party Defendants.

Bankruptcy No. 79–0025.

United States Bankruptcy Court, D. New Jersey.

Sept. 12, 1980.

William J. O'Byrne, Mount Holly, N. J., for plaintiffs.

John J. Degnan, Atty. Gen., State of New Jersey by Paulette M. Sapp, Deputy Atty. Gen., Trenton, N. J., for defendants.

## OPINION

RICHARD W. HILL, Bankruptcy Judge.

This matter arises in the context of a petition for relief under Chapter 11 of the Bankruptcy Code filed by Kahr Brothers, Inc., a home builder and developer. Prior to filing, a group of homeowners commenced suit in the Superior Court of New Jersey, seeking relief for the alleged construction of inadequate and unsafe homes they had purchased in a development known as Orchard Estates, and named various defendants, including the State of New Jersey, Department of Community Affairs, Bureau of Construction Code Enforcement. The debtor removed the action to the Bankruptcy Court.[1]

By Count Thirteen of the Complaint, plaintiffs alleged that defendant, State of New Jersey, Department of Community Affairs, Bureau of Construction Code Enforcement[2] negligently and willfully failed to enforce various building and construction code regulations and laws. The complaint

---

1. Removal was effectuated pursuant to 28 U.S.C. Section 1478.

2. The complaint also named, individually, as defendants, Ralph DeVino and Richard Vogel, officers of the Bureau of Construction Code Enforcement. A motion to dismiss as to these defendants was denied.

specifically alleged that defendant was aware of the many code and safety deficiencies in the homes, yet failed to adequately insure that the builders complied with the regulations. Plaintiffs claim that as a result they have suffered financially and in the material enjoyment of their homes. By Count Sixteen, plaintiffs also charge that the above defendant, along with various corporate, government and individual defendants, did intentionally conspire to defraud plaintiffs, and deprive them of the full use and enjoyment of their homes by deceiving plaintiffs into paying for unsafe, unliveable, unmerchantable homes constructed in a flood area without proper drainage. In Count Seventeen, plaintiffs appear to charge that the above defendant willfully and recklessly failed to enforce the building laws equally and fairly, in violation of 42 U.S.C. Sections 1983, 1985, 1986, the Fifth and Fourteenth Amendments to the United States Constitution and Article I, Sections I and V of the Constitution of the State of New Jersey, with the result that plaintiffs suffered monetarily and in the material enjoyment of their homes. In conjunction with all counts of the complaint plaintiffs seek judgment for damages, punitive damages, costs of suit, court costs, counsel fees and interest.

The State of New Jersey, Department of Community Affairs, Bureau of Construction Code Enforcement has moved before this Court to dismiss the complaint against said defendant for failure to state a claim upon which relief can be granted, on the ground that the State of New Jersey is immune from suit in federal court under the Eleventh Amendment of the United States Constitution, absent consent or waiver, and, alternatively, that the State of New Jersey is not a "person" for purposes of 42 U.S.C. Section 1983 of the Civil Rights Act, 42 U.S.C. Section 1981 et seq.

The Eleventh Amendment of the United States Constitution states:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

U.S.Const. Amend. XI.

■ The Eleventh Amendment, as presently construed by the Courts, bars the exercise of federal jurisdiction over suits commenced by private parties in federal court against a state. *Edelman v. Jordan*, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *Employees of the Dep't of Public Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279, 93 S.Ct. 1614, 39 L.Ed.2d 251 (1973); *Ford Motor Co. v. Department of Treasury*, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945). The Eleventh Amendment, by its terms, does not bar suits against a state by its own citizens. In *Cohens v. Virginia*, 19 U.S. (6 Wheat.) 264 (1821), 5 L.Ed. 257, Chief Justice Marshall construed the Eleventh Amendment literally, denying access to federal courts only when a state was sued by a citizen of another state. In *Hans v. Louisiana*, 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), the United States Supreme Court held that a state could not be sued by its own citizens in federal court. In so doing, the *Hans* Court noted that "(i)t is inherent in the nature of sovereignty not to be amenable to the suit of an individual without its consent." *Id.* at 13, 10 S.Ct. at 506. The Supreme Court has since interpreted *Hans* as expanding the scope of the Eleventh Amendment by incorporating principles of sovereign immunity, and has held that an unconsenting state is, likewise, immune from suits brought in federal court by its own citizens as well as citizens of foreign states. *See Edelman v. Jordan, supra* at 662–63, 94 S.Ct. at 1355; *Department of Public Health & Welfare, supra* at 280, 93 S.Ct. at 1615; *Parden v. Terminal Ry.*, 377 U.S. 184, 186, 84 S.Ct. 1207, 1209, 12 L.Ed.2d 233 (1964); *Great Northern Life Ins. Co. v. Read*, 322 U.S. 47, 51, 64 S.Ct. 873, 875, 88 L.Ed. 1121 (1944); *Duhne v. New Jersey*, 251 U.S. 311, 313, 40 S.Ct. 154, 154, 64 L.Ed. 280 (1920).[3]

**3.** Justice Brennan has taken a somewhat different view of the Eleventh Amendment than his colleagues on the Court. Justice Brennan takes the position of Chief Justice Marshall in

■ While the Eleventh Amendment does not bar suits in federal court against state officials for prospective injunctive relief, *Edelman v. Jordan, supra; Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), which may have an ancillary effect on the state treasury, see *Quern v. Jordan,* 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), "when the action is in essence one for recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit." *Edelman v. Jordan, supra* at 663, 94 S.Ct. at 1356; *Ford Motor Co., supra* at 464, 65 S.Ct. at 350.[4] The decision in *Edelman,* thus, effectively barred retroactive monetary relief against a state for constitutional[5] violations, absent a waiver of Eleventh Amendment immunity by the state. *Edelman, supra* at 673–77, 94 S.Ct. at 1360–62. See also *Quern v. Jordan, supra.* The Eleventh Amendment is, likewise, applicable to agencies which are arms or alter egos of the state. *See Brennan v. University of Kansas,* 451 F.2d 1287 (10th Cir. 1971).

■ Nor is Section 1983 to be viewed as a waiver of a state's Eleventh Amendment immunity from suit in federal courts. *Edelman v. Jordan,* 415 U.S. at 675–76, 94 S.Ct. at 1361–62. 42 U.S.C. Section 1983

provides that a civil action may be brought by any "person," who "under color" of state law, "subjects, or causes to be subjected, any citizen of the United States or any person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunity secured by the Constitution and laws."

In *Edelman,* a suit was brought under Section 1983 by the recipients of a public aid program to recover retroactive monetary and injunctive relief against state officials who allegedly monitored the federal–state program of Aid to the Aged, Blind, and Disabled (AABD) inconsistently with federal regulations and with the Fourteenth Amendment to the Constitution. In speaking of the Eleventh Amendment's bar to a suit for money judgment against the state, the Court stated:

(I)t has not heretofore been suggested that (Section) 1983 was intended to create a waiver of a State's Eleventh Amendment immunity merely because an action could be brought under that section against state officers, rather than against the State itself. Though a (Section) 1983 action may be instituted by public aid recipients . . . a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to

*Cohens,* that the Eleventh Amendment bars only suits against a state by citizens of another state. See *Employees of the Department of Public Health & Welfare v. Department of Public Health & Welfare,* 411 U.S. 279, 298, 309–324, 93 S.Ct. 1614, 1624, 1630–1637, 36 L.Ed.2d 251 (1979) (Brennan, J., dissenting). In Justice Brennan's view, *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890), was not an Eleventh Amendment case, but one involving the ancient doctrine of sovereign immunity. *Id.* at 313, 93 S.Ct. at 1632. As Justice Brennan said in *Employees:*

"(E)xcept as the Eleventh Amendment may be read to create a jurisdictional bar against suits by citizens of another State or by aliens, the restriction on the exercise of the federal judicial power in suits against a State brought by individuals derives, not from anything in the Constitution, including Art(icle) III, but from traditional nonconstitutional principles of sovereign immunity." 411 U.S. at 320, 93 S.Ct. at 1635.

4. The enactment of the Eleventh Amendment in 1798 was an effort by Congress to overrule *Chisolm v. Georgia,* 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1793), in which the United States Supreme Court held that a state could be sued in federal court by a citizen of another state. Congress sought to protect state treasuries from claims of individual citizens which would exacerbate the magnitude of state debts incurred during the Revolutionary and post–Revolutionary years. *See* Note, *State Monetary Accountability For Civil Rights Violations: Reconciling The Eleventh And Fourteenth Amendments,* 43 Albany L.Rev. 708, 708 (1979), (hereinafter *State Monetary Accountability*).

5. *Edelman* was a Section 1983 case. The Court notes a decision by the United States Supreme Court, *Maine v. Thiboutot,* —— U.S. ——, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), which apparently broadened the scope of relief under Section 1983, beyond violations of civil rights laws, to include purely statutory violations of federal law. *Id.* —— U.S. at ——, 100 S.Ct. at 2503.

prospective injunctive relief, Ex parte Young, supra, and may not include a retroactive award which requires the payment of funds from the state treasury, *Ford Motor Co. v. Department of Treasury*, supra.

*Edelman*, 415 U.S. at 675–77, 94 S.Ct. at 1362.

■ In addition to the Eleventh Amendment's bar to suits brought by a citizen in federal court against a state under Section 1983, courts have construed the language of Section 1983 to limit its applicability. "Persons" amenable to suit under Section 1983 include state officials who violate a person's constitutional rights. *Ex parte Young, supra.* The United States Supreme Court recently overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961) and its rule of municipal immunity, to hold in *Monell v. Department of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), that municipalities are "persons" subject to suit under Section 1983. *Id.* at 701, 98 S.Ct. at 2041. Despite the holding in *Monell*, the United States Supreme Court has yet to go further and hold that states are also "persons" within Section 1983.[6] The Court in the recent case of *Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979), reaffirmed the Court's position, albeit in *dictum*, that Section 1983 should not be construed to "override the traditional sovereign immunity of the states." *Id.* at 341, 99 S.Ct. at 1145.[7]

Recent decisions of the United States Supreme Court have defined both the scope and possible limitations on the concept of states' Eleventh Amendment immunity under *Edelman. See Hutto v. Finney*, 437 U.S. 678, 98 S.Ct. 2565, 57 L.Ed.2d 522 (1978); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). *Fitzpatrick v. Bitzer* demonstrates the power of Congress to circumvent the states' Eleventh Amendment immunity from suit in federal court. The Court in *Fitzpatrick* held that Congress could authorize a suit for money damages against state government, brought under the 1972 amendments to Title VII of the Civil Rights Act of 1964, legislation enacted pursuant to Section 5 of the Fourteenth Amendment. The *Fitzpatrick* court concluded that "the Eleventh Amendment, and the principle of state sovereignty which is embodies . . . are necessarily limited by the enforcement provisions of (Section) 5 of the Fourteenth Amendment." *Fitzpatrick*, 427 U.S. at 456, 96 S.Ct. at 2671. In *Hutto v. Finney*, the Supreme Court upheld a federal court's award of attorneys fees to a successful civil

**6.** The Court's decision in *Monell* overruled *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), insofar as *Monroe* made local governments totally immune from a Section 1983 suit. The *Monell* court's finding of municipal liability under Section 1983 has called into question the liability of the state under Section 1983. "Given our holding in Monell, the essential premise of our Edelman holding . . . would clearly appear to be no longer true." *Hutto v. Finney*, 437 U.S. 678, 703, 98 S.Ct. 2565, 2580, 57 L.Ed.2d 522 (1978) (Brennan, J., concurring). Other commentators have noted that given the holding in *Monell*, a finding that the state is a "person" within the meaning of Section 1983 logically follows. *State Monetary Accountability, supra* at 721. Furthermore, the *Monell* holding has seemingly cast doubt upon pre–*Monell* decisions wherein the basis for holding a state immune from suit under Section 1983 was that if a municipality was not a "person," neither was a state. See *Zuckerman v. Appellate Div.*, 421 F.2d 625 (2d Cir. 1970); *Williford v. People*, 352 F.2d 474, 476 (9th Cir. 1965). Nonetheless, lower federal courts have refused to recognize that the necessary implication of *Monell* is an overruling of prior Supreme Court cases holding that Section 1983 does not abrogate the states' Eleventh Amendment sovereign immunity. *See Skehan v. Board of Trustees*, 590 F.2d 470, 488 (3d Cir. 1978); *Bogard v. Cook*, 586 F.2d 399, 410 (5th Cir. 1978).

**7.** Justice Brennan, in a concurring opinion, noted that the Court's holding in *Quern* that a state is not a "person" for purposes of 42 U.S.C. Section 1983 was "patently dicta," the Court deciding "an issue unnecessary to its holding." *Quern v. Jordan*, 440 U.S. 332, 350, 99 S.Ct. 1139, 1150, 59 L.Ed.2d 358 (1979). Brennan argued that *Monell* made it "surely at least an open question whether (Section) 1983 properly construed does not make the States liable for relief of all kinds, notwithstanding the Eleventh Amendment." *Id.* at 351, 99 S.Ct. at 1151, *quoting Hutto v. Finney*, 437 U.S. 678, 703, 98 S.Ct. 2565, 2580, 57 L.Ed.2d 522 (1978) (Brennan, J., concurring).

rights litigant under the Civil Rights Attorney's Fees Award Act of 1976. The Court found that such a fee, paid from state funds, did not violate the Eleventh Amendment under the doctrine of either *Ex parte Young, supra,* or *Edelman v. Jordan, supra,* which grants the states immunity from retroactive monetary relief. *Hutto,* 437 U.S. at 690, 98 S.Ct. at 2573. The *Hutto* court emphasized *Edelman's* distinction between retroactive and prospective relief, the latter, being where the cost of compliance was " 'ancillary' to the prospective order enforcing federal law." *Id.* The award of attorneys fees was not regarded by the *Hutto* court as retroactive relief in contravention of the Eleventh Amendment, but, rather, as a fine "ancillary to the federal court's power to impose injunctive relief."[8] *Id.* at 691, 98 S.Ct. at 2574.

Plaintiffs have specifically named the State of New Jersey, Department of Community Affairs, Bureau of Construction Code Enforcement as defendant in this litigation in bankruptcy court. The Court has found that the Eleventh Amendment bars suit for retroactive monetary relief against a state in federal court. Furthermore, Section 1983 is not to be construed as a waiver of the state's Eleventh Amendment immunity. In addition, regardless of the Eleventh Amendment bar, the Court finds that a state is not a person for purposes of Section 1983. This Court finds that the Section 1983 claim of Ronald and Joan De-Luca, et al., against the State of New Jersey, Department of Community Affairs, Bureau of Construction Code Enforcement should be dismissed as failing to state a claim upon which relief can be granted because the state is not a "person" pursuant to Section 1983. *See Edelman v. Jordan, supra.* To the extent that the monetary relief requested is not asked under Section 1983, those claims shall be remanded to state court, because the federal court lacks jurisdiction to adjudge money damages against the State or its agencies by reason of the Eleventh Amendment's grant to the states of immunity from suit in federal court.[9] *See Edelman v. Jordan, supra; Ex parte Young, supra.*

**8.** The Court has allowed awards for costs viewed an "ancillary" to prospective relief granted, and, therefore, not in violation of the Eleventh Amendment. In *Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977), the United States Supreme Court affirmed an order requiring state officials to pay a substantial sum to help defray the cost of a school desegregation order. The *Milliken* Court found that such relief fitted "squarely" within the prospective compliance exception reaffirmed by *Edelman* as well as the rule of *Ex parte Young* that federal courts may enjoin state officials to conform their conduct to requirements of federal law, notwithstanding a "direct and substantial effect on the state treasury." *Milliken,* 433 U.S. at 289, 97 S.Ct. at 2762. *Milliken* distinguished its award from one for "accrued monetary liability" forbidden by the Eleventh Amendment. *Id.* More recently, the Court in *Quern v. Jordan,* 440 U.S. 332 (1979), 99 S.Ct. 1139, 59 L.Ed.2d 358, upheld as consistent with the Eleventh Amendment an order requiring state officials to send notices to class members apprising them of available state administrative procedures by which they might determine entitlement to past welfare benefits, despite the fact that preparing and mailing notices would involve incidental administrative expense. *Id.* at 346–47, 99 S.Ct. at 1148–49. The *Quern* Court found that such "relief falls on the Ex parte Young side of the Eleventh Amendment line rather than the Edelman side." *Id.* at 347, 99 S.Ct. at 1148. The Court of Appeals had noted that "(t)he form of notice we envisage would not create a 'liability' against the state . . . No federal judgment against the state would be created." *Quern,* 440 U.S. at 336, 99 S.Ct. at 1142, *citing* 563 F.2d 873; *See also Parden v. Terminal Ry.,* 377 U.S. 184, 84 S.Ct. 1207, 12 L.Ed.2d 233 (1964).

**9.** The enactment of the New Jersey Tort Claims Act, N.J.S.A. 59:1–1 *et seq.* does not change the result. The New Jersey Tort Claims Act is a limited waiver of the state's sovereign immunity; by passage of the Act, the State of New Jersey did not waive its Eleventh Amendment immunity from suit in federal court. *Ritchie v. Cahall,* 386 F.Supp. 1207, 1209–10 (D.N.J. 1974).